BRANHAM *et al* v. BLEDSOE CREEK TURNPIKE Co.

BOUNDARIES. *Middle of a stream. Island.* In the conveyance of land on a creek a call for one-half the creek, or for a line down the center of the creek with its meanders, carries title to the middle of the main branch if the stream is divided by an island into two unequal branches.

FROM WILSON.

Appeal from the Chancery Court at Gallatin. H. H. LURTON, Ch.

WILSON & VERTREES for complainants.

SEAY & BLACKMORE for defendants.

COOPER, J., delivered the opinion of the court.

Bill filed to test the ownership of an island in Bledsoe creek. The complainants own the land on the west bank of the creek, and claim the whole island as a part thereof. The defendant owns the land on the east bank, and claims about one-half the island.

From a period whereof the memory of man runneth not to the contrary, the island in controversy seems to have been in existence, varying at times in heighth and size, but always visible at ordinary stages of the water, and only covered at high floods. From the 6th of January, 1847, when the title of the complainants begins, the witnesses concur in thinking that the island has been increasing, in width towards the west, and in length down stream certainly, and perhaps

up stream also.    All the witnesses who speak on the point agree in a fact which seems to militate against the supposed extension up stream.    They say that there are some large sycamore trees at the upper end of the island, standing upon roots now high out of the water, which must have antedated the date mentioned.    The probability is, that the increase in length has been principally down stream, and in width toward the western bank, that bank being low and alluvial, while the opposite bank is principally a high bluff.    The stream is in one body from an old . dam several hundred yards above the island and separates into two branches at the head of the island, the branch on the east curving gently against the foot of the bluff, while the western branch runs at present almost at right angles across the head of the island.    All the witnesses agree that the eastern branch is now, and has been for many years, the main stream, the western branch toward the head of the island becoming dry, or nearly so, in very low water.    There is a difference of opinion among the witnesses as to whether the two branches have always been of the same relative size.    Several witnesses say that the western branch was at one time the largest, but the weight of testimony is that the main stream has always been to the east of the island, and has always occupied the existing bed.    There is testimony tending to show a gradual washing away in freshets of the western bank until stones were so thrown as to prevent further encroachment.    I am inclined to think the statement of John Branham, Sr., one of the complain-

ants, in his deposition, is substantially correct. "The west bank," he says, "has been constantly receding, how far I can't state. With this exception, and the fact that the island was not as long as it is now, the appearance of the creek, banks and island is about now as it was when I went there." The middle line between the two banks as they now exist bisects the island, lengthwise, into two nearly equal parts.

The grant of land by the State, bounded by, on, or along a stream not navigable, carries title to the centre or thread of the stream, and to an island lying next to that bank between it and the middle line. *Stuart* v. *Clark,* 2 Swan, 10; *Lunt* v. *Holland,* 14 Mass., 149; *Luce* v. *Carley,* 24 Wend., 451; *Claremont* v. *Carleton,* 2 N. H., 369. The same rule applies to a private grant, where the grantor owns the entire stream. *Hayes* v. *Bowman,* 1 Rand., 417; *King* v. *King,* 7 Mass., 496. The thread of a stream is the middle line between the shores, irrespective of the depth of the channel, taking it in the natural and ordinary stage of the water, at its medium heighth, neither swollen by freshets nor sunk by drouth. If there be an island on one side of that line, or if an island form there, it belongs to the owner of the bank to which it is nearest, and the *filum aquœ* is in the centre of the stream beyond. *Missouri* v. *Kentucky,* 11 Wall., 395; *Walker* v. *Board of Public Works,* 16 Ohio, 544. If the island be situated, or be formed so as to cover the middle thread it would belong in severalty to the owners of the land on each bank, according to the original dividing line or *filum aquœ,*

curving with the shores. *Ingraham* v. *Wilkinson*, 4 Pick., 274; *Deerfield* v. *Arms*, 17 Pick., 41; *McCullough* v. *Wall*, 4 Rich., 68. The existence of an island, whether old or newly formed, necessarily creates two streams, each of which will have its own *filum aquæ* as to that part of the stream in relation to any new acquisition of title to land bordering thereon. *Hopkins Academy* v. *Dickinson*, 9 Cush., 544. And gradual accretions to such an island, as to any new titles, would go to the previous owner. *Saulet* v. *Shepherd*, 4 Wall., 508.

At the time the parties to this suit acquired their respective titles to the lands on either bank, the island in controversy was in existence. The defendant claims under a chancery decree made in December, 1873, directing the clerk and master to make title in accordance with a survey, the calls of which are for courses and distances, fixing the line, it seems, at low water mark on the east bank of the creek. Such a boundary, we have seen, would, at most, carry title only to the thread of the eastern branch of the creek. It is conceded, therefore, that the question is whether the complainants own the whole island.

In 1828, and again in 1834, a deed seems to have been made of the land on the west bank of the creek, the boundary lines of which call for low water mark on the eastern bank. The deed, however, to which complainants trace back their title, conveyed the land on the west bank, above the old dam and extending down below the island, giving the creek boundary thus: "Beginning at a stake in the edge of the

creek, thence down said creek, with its several meanders, including all the creek until it passes where the old dam stood, and then half the creek to a stake in said creek." Afterwards, Jameson, to whom and the elder Branham the deed had been made, conveyed his interest in the property to the complainant, John T. Branham, the line crossing the creek above the dam to the east bank, and running down that bank so as to include the whole creek to the dam. The deed then proceeds thus: "Thence with the mill dam to the center of the creek, thence down the center of the creek, with its meanders, to a point on a straight line with the first named line, so that a line running north $2\frac{1}{2}°$ west from the middle of the creek will strike the beginning."

The last deed, it will be noticed, calls for a line down the center of the creek with its meanders. If the stream is in one body the call is for the *filum aquæ* at the ordinary stage of the water, If the stream divides into two branches, the call may be for the *filum aquæ* as it would have been if the island, which separates the waters, had not existed; or it may mean the *filum aquæ* of the main channel. In *Missouri* v. *Kentucky*, 11 Wall., 401, the Supreme Court of the United States take for granted that the boundary of States which calls for the "middle of the river Mississippi," means the middle of the main channel, not the *filum aquæ* measuring from the outside bank on the one side to the bank on the other side. The inconvenience of a different construction is obvious, for it might result in running the line through islands

in every imaginable direction. The same inconvenience, *magnis componere parvis,* might follow the construction of a private grant between individuals. The grantor, unless he plainly said so, could hardly, by a call for the center of a stream, be held to intend to divide an island into uncertain fractions between him and his grantee. It is more reasonable to suppose that the intention was to follow the center of the main stream, the more especially as a call for the stream or its bank would carry title to the middle thread. A call for half of a stream requires the same construction in order to avoid the like evils. We are the more willing to accept the conclusion in this case because the evidence leaves no doubt that the owners of the land on the west bank, which has been the site of a mill since early in the century, have always treated the island as an extension of the low land on their side, and the loss in washing has been from their bank.

The decree below will be reversed with costs.